**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **NICOLE TRUELOVE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:19-CV-00763** |
| | § | |
| **TEXAS DEPARTMENT** | § | |
| **OF CRIMINAL JUSTICE, et al.,** | § | |
| **Defendants.** | § | |

_____

**DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S
MOTION FOR SUMMARY JUDGMENT**

_____

# Exhibit B

**Document 32, Memorandum and Order, <u>Rodriguez v. Texas Department of
Criminal Justice</u>, Case No. 4:01-CV-3985 (S.D. Tex., Jul. 23, 2003)**

United States Courts
Sou... ...xas

JUL 2 4 2003

..... ..... ..... ...., C.... J... Court

| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

JESUS RODRIGUEZ, §
§
   Plaintiff, §
§
*versus* §  CIVIL ACTION H-01-3985
§
TEXAS DEPARTMENT OF CRIMINAL §
JUSTICE, *et al.*, §
§
   Defendants. §

## MEMORANDUM AND ORDER

### I.  Introduction

Pending before the court is Defendants The Texas Department of Criminal Justice ("TDCJ"), The Texas Board of Criminal Justice ("the Board"), Gary Johnson ("Johnson"),Windham School District ("WSD"), Cheryl Lawson ("Lawson"), Felix Buxkemper ("Buxkemper"), Mike Morrow ("Morrow"), Robert Oates ("Oates"), and John Spencer's ("Spencer") (collectively "Defendants") Motion for Summary Judgment (#23) and Plaintiff Jesus Rodriguez's ("Rodriguez") Motion for Summary Judgment and Motion for Sanctions (# 21). The parties move for summary judgment regarding Rodriguez's claims of employment discrimination based on race, disability, and gender under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2000h-6, the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12113, the Rehabilitation Act, 29 U.S.C. § 794(a), the Civil Rights Act of 1866, 42 U.S.C. §1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, other federal civil rights acts, 42 U.S.C. §§ 1982 and 1985, the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. §§ 21.001-21.128, the Equal Protection and Due Process Clauses of the



Fourteenth Amendment to the United States Constitution, Title IX, 20 U.S.C. § 1681, and several Texas common law claims, including defamation, tortious interference with contract, and intentional infliction of emotional distress. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion for summary judgment should be granted and that Rodriguez's motion for summary judgment and sanctions should be denied.

II.    <u>Background</u>

Rodriguez is a Mexican-American male, who has been employed as a diagnostician by WSD since 1979. WSD provides classes for inmates confined within TDCJ. The Board sets WSD's policies and serves as its school board. WSD, however, is a separate entity from TDCJ, and its employees are hired, paid, trained, supervised, and disciplined by WSD.

On January 1998, Rodriguez was laterally transferred at his request from Region III, which encompasses the area reaching from Houston to Beaumont, Texas, to Region I, which is located in Huntsville, Texas. He was assigned to the Estelle Unit under the direct supervision of principal Buxkemper. On February 27, 1998, Rodriguez received a written reprimand from Buxkemper for failing to notify him that he would be absent that day due to a family illness. Less than a week later, on March 4, 1998, Rodriguez received a memorandum from Buxkemper regarding his absences, noting that he had missed five days of work since his transfer two months previously. According to the memorandum, three of those absences were on days preceding or following holidays or non-working days. In another memorandum dated September 29, 1998, Buxkemper detailed Rodriguez's twenty-two absences for the 1997-1998 school year, seventeen of which were either the day before or the day after other days off.

In May 1999, Rodriguez requested discretionary leave on a day that had already been scheduled for planning—days that are set aside by WSD to coordinate staff and facilities. Rodriguez explained that he needed the leave because he was scheduled to appear in court in the Rio Grande Valley. He alleges that Buxkemper falsely accused him of wanting the time off "to celebrate *Cinco de Mayo* with [his] Mexican friends." Buxkemper denies making such a statement. He maintains that Rodriguez was allowed the leave, but because Rodriguez had missed two previous planning days, Buxkemper required him to submit written documentation of his presence in court. Rodriguez alleges that in the same month, several WSD employees, including Oates, WSD's assistant superintendent, and Lawson, WSD's personnel director, made racial remarks directed at him and treated him differently because of race. Lawson informed Rodriguez that he could file a grievance or a complaint with the Equal Employment Opportunity Commission ("EEOC"), which he declined to do. On May 28, 1999, WSD contacted Jim Bush to request an internal investigation of Rodriguez's allegations.

According to Oates, in late 1999, Rodriguez was accused of misusing property of a prison unit and leaving a secured area open. After an internal investigation, Rodriguez was not charged with a disciplinary infraction but was transferred on September 1, 1999, from the Estelle Unit to the Wynne Unit, also in Huntsville. There, he held the same diagnostician position and received the same pay and benefits. Rodriguez alleges that during WSD's investigation into the "false allegations," he was suspended with pay for five weeks, transferred, and not allowed back to his office at the Estelle Unit.

Rodriguez received a written reprimand on September 9, 1999, from Morrow for allegedly altering a commendation letter from Virginia Price ("Price"), a vocational counselor. The

document included the statement, "He has done an excellent job for us." Price maintained that this statement was not contained in the original letter, and subsequent investigation revealed that it was added by an inmate clerk at Rodriguez's request. Rodriguez was reprimanded for falsifying records in violation of district policy, but this reprimand did not affect his pay or benefits.

On September 20, 1999, Rodriguez filed the first of two charges of discrimination with the EEOC, alleging that he had been discriminated against based on his race and disability. Rodriguez indicated in his EEOC charge that the discrimination took place between February 1998 and September 1999. Specifically, he alleged that he had been subjected to racial slurs, racist comments, and disparate treatment because of his race and that WSD had denied his requests for reasonable accommodation of his disability. Rodriguez claims that he suffers from post poliomyelitis[1] and related leg, hip, and spine deformities, paralysis, and chronic muscle and bone deterioration, which affect his ability to walk, stand, breathe, and perform manual tasks. He has submitted no medical records, however, confirming his alleged condition. Rodriguez further asserted that he was transferred and reprimanded in retaliation for filing an internal equal employment opportunity ("EEO") complaint.

Rodriguez's second EEOC charge involved a claim of sexual harassment alleged to have occurred after his transfer to the Wynne Unit in September 1999. Rodriguez asserted that he was sexually harassed by Carol Walters ("Walters"), a WSD secretary. He maintained that he was

---

[1] "Poliomyelitis" is "an acute infectious disease occurring sporadically or in epidemics and caused by a virus. . . . It is characterized clinically by fever, sore throat, headache and vomiting, often with stiffness of the neck and back. In the *minor illness* . . . these may be the only symptoms. The *major illness*, which may or may not be preceded by the minor illness, is characterized by involvement of the central nervous system, stiff neck, pleocytosis in the spinal fluid, and perhaps paralysis. . . . There may be subsequent atrophy of groups of muscles, ending in contraction and permanent deformity." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1324-25 (29th ed. 2000).

4

subjected to repeated sexual comments and innuendo, improper body language, touching, hugging, kissing, phone calls, and office visits by Walters. Rodriguez contends that his supervisor failed to file his September 29, 1999, internal complaint for more than five weeks after he submitted it. His charge was filed within days of an almost identical charge filed by Walters against Rodriguez. The internal investigation of both complaints concluded in early March 2001, when officials determined that there was insufficient evidence to support either sexual harassment charge. Rodriguez filed his formal charge of discrimination with the EEOC on March 13, 2001, indicating that the purported sexual harassment occurred between September 15, 2000, and September 28, 2000.

On March 19, 2001, Rodriguez received a fourth reprimand from Oates. According to the reprimand, Rodriguez violated employee policies by failing to work a full eight-hour day, using a state-owned vehicle for personal purposes and unauthorized travel, and not following the directives of his supervisor. Oates recommended that Rodriguez be transferred to a position that "requires little or no travel, where [his] time and use of state resources can be more closely supervised and [his] professional relationship with district and agency personnel appropriately monitored."

Rodriguez maintains that two of the employee evaluations he received during his tenure under Buxkemper's supervision were biased. In his 1998-1999 employee evaluation, Rodriguez received a "satisfactory" in all but one category—assisting the principal and the special education teachers in the maintenance of records—for which he received a "needs improvement." Under this category, Buxkemper wrote that Rodriguez had missed time lines and accommodation plans and that he needed to organize his records. Under the comments portion, Buxkemper suggested

5

that Rodriguez keep daily time schedules, develop better working relationships by leaving his office and working with staff, and better inform principals of special education needs. He also wrote that Rodriguez performed most of his duties satisfactorily. Rodriguez refused to sign the evaluation, indicating that he wanted the "needs improvement category" changed to at least "satisfactory." In his 1999-2000 evaluation, all of the categories were marked "satisfactory." Following both evaluations, Rodriguez's pay and benefits were not reduced. In fact, during the course of his employment with Region I, his salary increased $3,000, from $51,364 to $54,364 per year.

On July 10, 2001, Rodriguez received notice of his right to sue regarding his first EEOC charge, and, proceeding *pro se*, he instituted this action on November 15, 2001, seeking $20,000,000.00 in damages. In his complaint, he claims to be the victim of race discrimination and sexual harassment in violation of Title VII, § 1981, and § 1983, and disability discrimination in violation of the ADA and the Rehabilitation Act. Moreover, Rodriguez asserts that the transfer, reprimands, disparate treatment, continued exposure to a hostile work environment, and denial of promotions were in retaliation for his advocacy of minority rights and the racial discrimination charges that he had lodged against his employer. He also alleges that Defendants did not accommodate his disability as required by law.

Additionally, Rodriguez maintains that Defendants did not investigate his sexual harassment complaint promptly or thoroughly, that no corrective action was taken, and Defendants did not advise him of sexual harassment complaints filed against him. He further alleges that during the six-month EEO investigation, his employer, supervisor, and co-workers conspired to set him up and entrap him, in part because of his prior charges of racial and disability discrimination.

6

On February 26, 2003, Rodriguez filed a motion for summary judgment and sanctions, arguing that Defendants failed to answer his original complaint and, by doing so, acted in bad faith. TDCJ seeks summary judgment on all of Rodriguez's claims, arguing that the facts do not demonstrate a hostile environment or disparate treatment based on race, disability, sex, or retaliation and that he has failed to present a claim of unlawful employment discrimination under any theory. TDCJ further asserts that Rodriguez has not exhausted his administrative remedies. In addition, Defendants maintain that Rodriguez has no cognizable cause of action under Texas statutory or common law or under the United States Constitution or any federal statutes.

III.    Analysis

A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir. 1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998). Where a defendant moves for summary judgment on the basis of

7

an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving parties, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Rushing*, 185 F.3d at 505; *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321-22; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179,

181 (5th Cir. 1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n.14 (5th Cir. 1993)); *see Reeves*, 530 U.S. at 150; *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321; *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999); *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir. 1997), *cert. denied*, 525 U.S. 1103 (1999). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Marshall*, 134 F.3d at 321. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Little*, 37 F.3d at 1075 ("*[w]e do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" (emphasis in original) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Hart*, 127 F.3d at 435; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th

9

Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.     Effect of No Response to Motion

In the case at bar, Rodriguez, the non-moving party, has filed no response and has proffered no evidence in opposition to Defendants' motion. Summary judgment may not be awarded by default, however, merely because the non-moving party has failed to respond. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). Nonetheless, the court may grant summary judgment if the movant has made a *prima facie* showing that it is entitled to such relief. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); FED. R. CIV. P. 56(e). The court may also accept as undisputed the facts set forth in

10

support of the unopposed motion for summary judgment. *See Eversley*, 843 F.2d at 174; *Perry Williams, Inc. v. FDIC*, 47 F. Supp. 2d 804, 809 (N.D. Tex. 1999); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996).

      C.      <u>Racial and Gender Discrimination Claims under Title VII, Section 1981, and Section 1983</u>

      1.      <u>Burden of Proof</u>

Since 1964, Title VII has provided that "[i]t shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Desert Palace, Inc. v. Costa*, ___ U.S. ___, 123 S. Ct. 2148, 2150 (2003). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)).

"Section 1981 provides that all persons in the United States shall have the same contractual rights as 'white citizens.'" *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996); *see* 42 U.S.C. § 1981(a). More specifically, § 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Felton v. Polles*, 315 F.3d 470, 479-80 (5th Cir. 2002); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d

1048, 1049 (5th Cir. 1998). Section 1981 further provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c); *see Felton*, 315 F.3d at 480. Congress initially enacted § 1981 as part of the Civil Rights Act of 1866 pursuant to § 2 of the Thirteenth Amendment. *See Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1348 (8th Cir. 1988). Section 1981 was amended by the Civil Rights Act of 1991, which added subsections (b) and (c). *See Felton*, 315 F.3d at 480. This amendment was "'designed to restore and strengthen civil rights laws that ban discrimination in employment. . . . By restoring the broad scope of Section 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race.'" *Fadeyi*, 160 F.3d at 1050 (quoting H.R. Rep. No. 102-40(II), 102d Cong., 1st Sess., at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694).

Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Migra v. Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996), *cert. denied*, 521 U.S. 1112 (1997). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

12

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Felton*, 315 F.3d at 479; *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

It is well established that Title VII, § 1981, and § 1983 provide parallel causes of action for public employees alleging racial discrimination in employment and require essentially the same proof to establish liability. *See Walker v. Thompson,* 214 F.3d 615 (5th Cir. 2000); *Harris v. State Farm Fire & Cas. Co.,* 178 F. Supp. 2d 680 (W.D. La. 2001); *Lawrence v. University of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999); *Wallace*, 80 F.3d at 1047; *see also Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). In disparate treatment cases, all three statutes require a showing of intentional discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (Title VII); *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (§ 1981); *Washington v. Davis*, 426 U.S. 229, 238-42 (1976) (§ 1983); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (§§ 1981 & 1983); *LaPierre*, 86 F.3d at 448 (§ 1981 & Title VII); *Wallace*, 80 F.3d at 1047 (§ 1981, § 1983, & Title VII); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 714 (5th Cir. 1994) (§ 1981). In cases where, as here, a plaintiff invokes Title VII, § 1981, and § 1983 within the same lawsuit, "'specific consideration of these alternate remedies for employment discrimination . . . is necessary only if their violation can be made out on grounds different from those available under Title VII.'"

13

*Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1575 (5th Cir. 1989), *cert. denied*, 493 U.S. 1019 (1990) (quoting *Parker v. Mississippi State Dep't of Public Welfare*, 811 F.2d 925, 927 n.3 (5th Cir. 1987)).

Claims of employment discrimination brought under §§ 1981 and 1983 are generally governed by the same evidentiary framework applicable to claims brought under Title VII. *See, e.g., Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1996), *cert. denied*, 522 U.S. 1016 (1997) (§ 1981 & Title VII); *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 554 (5th Cir. 1997) (§ 1983 & Title VII); *LaPierre*, 86 F.3d at 448 (§ 1981 & Title VII); *Wallace*, 80 F.3d at 1047 (§ 1981, § 1983, & Title VII); *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1285 n.7 (5th Cir. 1994), *cert. denied*, 513 U.S. 1149 (1995) (§ 1981 & Title VII). Because the same evidentiary burdens apply, a claim that fails on its merits under Title VII will likewise fail under §§ 1981 and 1983.

A plaintiff asserting claims of employment discrimination under § 1983, however, has a more onerous burden than when proceeding under Title VII or § 1981. To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984). Claims of employment discrimination brought under § 1983 rely on the Equal Protection Clause of the Fourteenth Amendment as their constitutional basis. *See Southard*, 114 F.3d at 550; *Coleman*, 113 F.3d at 533; *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir. 1980).

Furthermore, a public sector employee cannot assert a viable § 1981 claim against a state entity or state actor independent of § 1983. The Fifth Circuit, relying on Supreme Court

authority, has held "that § 1981 [does] not provide a separate cause of action against local government entities." *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462 (5th Cir.), *cert. denied*, 534 U.S. 948 (2001) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989)); *see Felton*, 315 F.3d at 481. Instead, "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Oden*, 246 F.3d at 463 (citing *Jett*, 491 U.S. at 735-36); *accord Felton*, 315 F.3d at 481.

In *Jett*, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." 491 U.S. at 733; *accord Felton*, 315 F.3d at 481-82; *Oden*, 246 F.3d at 462-64. The Supreme Court further broadened the language in the opinion to include all state actors, holding that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett*, 401 U.S. at 735; *see Felton*, 315 F.3d at 481-82. Thus, "'[t]he Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law.'" *Felton*, 315 F.3d at 482 (quoting *Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F. Supp. 993, 996 (N.D. Ala. 1995)). In *Felton* and *Oden*, the Fifth Circuit recognized that *Jett* remains controlling law on this issue despite the changes to § 1981 effected by the Civil Rights Act of 1991. *See Felton*, 315 F.3d at 481; *Oden*, 246 F.3d at 463-64; *see also McCall v. Dallas Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 639-40 (N.D. Tex. 2001). Thus, Rodriguez has no cognizable cause of action against any of the state entity or state actor Defendants under 42 U.S.C. § 1981.

Under all three statutes, to the extent an actionable claim exists, "[a] plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *accord Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213, 1216 (5th Cir. 1995). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell*, 235 F.3d at 222; *see Reeves*, 530 U.S. at 143; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142; *Russell*, 235 F.3d at 222; *Wallace*, 80 F.3d at 1047 (citing *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995)); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (citing *Burdine*, 450 U.S. at 252-53). "'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *See Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Rios v. Rossotti*, 252 F.3d 375, 377 (5th Cir. 2001); *Pratt v. City of Houston*, 247 F.3d 601, 605 (5th Cir. 2001); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). "This burden is one of production, not

16

persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *Hicks*, 509 U.S. at 509); *see Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (quoting *Hicks*, 509 U.S. at 507) (emphasis in original); *accord Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)); *see Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001); *Russell*, 235 F.3d at 222. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253); *accord Hicks*, 509 U.S. at 507-08; *Crawford*, 234 F.3d at 902; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001).

"[I]n attempting to satisfy this burden, the plaintiff . . . must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253); *accord Hicks*, 509 U.S. at 515. "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating

17

that discrimination lay at the heart of the employer's decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" and that properly may be considered by the court when ruling on a motion for summary judgment. *Id.* (quoting *Reeves*, 530 U.S. at 148-49); *accord Crawford*, 234 F.3d at 902.

"[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256). "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147 (emphasis in original); *accord Ratliff v. City of Gainesville*, 256 F.3d 355, 360-62 (5th Cir. 2001); *Blow v. City of San Antonio*, 236 F.3d 293, 297 (5th Cir. 2001). "[M]ore likely than not, a showing of pretext will lead to an inference of discrimination." *Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 147).

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*Hicks*, 509 U.S. at 511 (emphasis in original). Hence, a plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148; *Ratliff*, 256 F.3d at 362; *Blow*, 236 F.3d at 298; *Russell*, 235 F.3d at 223.

18

"Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148; *accord Ratliff*, 256 F.3d at 361-62. Yet, such a showing by the plaintiff will not always be adequate to sustain a finding of liability. *See Reeves*, 530 U.S. at 148; *Price*, 283 F.3d at 720. "[A] showing of pretext does not automatically entitle an employee to a judgment as a matter of law." *Russell*, 235 F.3d at 223 (citing *Hicks*, 509 U.S. 524). Indeed, "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Reeves*, 530 U.S. at 146 (quoting *Hicks*, 509 U.S. at 524).

"In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* (quoting *Hicks*, 509 U.S. at 519) (emphasis in original). Fifth Circuit case law is clear: "discrimination suits still require evidence of discrimination." *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001). "[T]here may be instances, although rare, where a showing of pretext would not be sufficient to infer discrimination." *Russell*, 235 F.3d at 223. "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148 (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291-92 (D.C. Cir. 1998)); *see Russell*, 235 F.3d at 223.

19

Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory.'" *Vadie*, 218 F.3d at 372 (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford*, 234 F.3d at 902 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Id.* at 903 (citing *Travis v. Board of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.*

2.    Title VII and Section 1983 Claims against TDCJ, the Board, and Johnson

Rodriguez's complaint alleges that TDCJ, the Board, and Johnson, the Executive Director of TDCJ, discriminated against him during his employment as a diagnostician. Defendants argue that Title VII, which prohibits discrimination by an employer against the employer's employees, is inapplicable to TDCJ, the Board, and Johnson because Rodriguez is employed by WSD.

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). To determine whether a defendant is the employer of the plaintiff for Title VII purposes, the Fifth Circuit applies a hybrid test that considers the "economic realities" of the work

20

relationship as an important factor and focuses on the extent of the employer's right to control the means and manner of the worker's performance. *See Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 505-06 (5th Cir. 1994); *Deal v. State Farm County Mut. Ins. Co. of Tex.,* 5 F.3d 117, 118-19 (5th Cir. 1993); *Mares v. Marsh,* 777 F.2d 1066, 1067-68 (5th Cir. 1985). In making a determination, the court looks to who hires, pays, trains, disciplines, and fires the employee. *See Lambertson v. Utah Dep't of Corrections,* 79 F.3d 1024, 1028 (10th Cir. 1996); *Mares,* 777 F.2d at 1068.

In this case, WSD controls the terms and conditions of Rodriguez's employment. According to the Texas Education Code, WSD is "separate and distinct" from TDCJ. *See* TEX. EDUC. CODE ANN. § 19.002. In his unrefuted affidavit, Morrow, the WSD superintendent, affirms that while the Board provides policies for WSD, only WSD—not TDCJ, the Board, or Johnson—is involved in the hiring, firing, training, disciplining, and supervising of WSD employees. Thus, because Rodriguez is not an employee of TDCJ, the Board, or Johnson, summary judgment on his Title VII claims against these defendants is mandated.

Moreover, in the context of actions brought under 42 U.S.C. § 1983, a state is not considered a "person" within the meaning of § 1983. *See Lapides v. Board of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613 (2002) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 (1989)). Hence, while state officials literally are persons, if sued in their official capacities, they are not deemed "persons" under § 1983. *See Will,* 491 U.S. at 71. A suit against an official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *See id.; Brandon v. Holt,* 469 U.S. 464, 471 (1985); *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 n.55 (1978); *Ganther v. Ingle,* 75 F.3d 207, 209 (5th Cir.

21

1996). Thus, it is no different than a suit against the state itself. *See Will*, 491 U.S. at 71 (citing *Kentucky v. Graham*, 473 U.S. 159, 164-66 (1985); *Monell*, 436 U.S. at 691 n.55). Therefore, Rodriguez's claims brought against TDCJ, the Board, and Johnson in his official capacity are not cognizable under § 1983, as TDCJ and the Board are state instrumentalities and Johnson is a state official sued in his official capacity, warranting summary judgment for these defendants on Rodriguez's § 1983 claim.

### 3. Title VII and Section 1981 Claims against Individual Defendants

Rodriguez's claims against Johnson, Lawson, Buxkemper, Morrow, Oates, and Spencer arise solely from their actions as managerial and supervisory employees of WSD. It is well settled in the Fifth Circuit that individual employees, even those functioning in a supervisory capacity, cannot be held personally liable under Title VII, because they are not "employers," as that term is defined in Title VII. *See Felton*, 315 F.3d at 478; *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 942 (5th Cir. 1996), *cert. denied*, 519 U.S. 1091 (1997); *Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir.), *cert. denied*, 513 U.S. 1015 (1994). It is equally clear under Fifth Circuit precedent that a Title VII plaintiff may not recover against a public employee in his individual capacity. *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990); *accord Felton*, 315 F.3d at 478. While Title VII's definition of the term employer includes "any agent" of an employer, the Fifth Circuit does not interpret the statute as imposing individual liability for such a claim, concluding that Congress's purpose was merely to import *respondeat superior* liability into Title VII. *See Smith*, 298 F.3d at 448 (citing *Indest*, 164 F.3d at 262). Hence, "the term 'employer'

22

does not include a hiring or supervisory official in his personal or individual capacity."
*Huckabay*, 142 F.3d at 241. Therefore, summary judgment is proper as to Rodriguez's Title VII claims against Johnson, Lawson, Buxkemper, Morrow, Oates, and Spencer.

Moreover, under controlling Fifth Circuit authority, a public employee cannot be held liable in an individual capacity under § 1981. *See Felton*, 315 F.3d at 481; *Oden*, 246 F.3d at 464. In *Oden*, when reversing a judgment against a county sheriff in his individual capacity for an alleged racially-motivated failure to promote, the Fifth Circuit explained:

> Only officials should be responsible for discriminatory decisions concerning government employment contracts. Likewise, when a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity.

*Id*. In *Felton*, the Fifth Circuit expanded this holding to include discrimination in the terms and conditions of state employment contracts, as well. *See* 315 F.3d at 481. Hence, the individual defendants cannot be held personally liable under § 1981, rendering summary judgment appropriate as to Rodriguez's § 1981 claims against Johnson, Lawson, Buxkemper, Morrow, Oates, and Spencer in their individual capacities.

4.     Qualified Immunity of Individual Defendants under Sections 1981 and 1983

Defendants Johnson, Lawson, Buxkemper, Morrow, Oates, and Spencer further assert that they are immune from Rodriguez's §§ 1981 and 1983 claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v.*

23

*Strickland*, 420 U.S. 308, 322 (1975)); *see Felton*, 315 F.3d at 477; *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001); *Kipps v. Callier*, 197 F.3d 765, 768 (5th Cir. 1999); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), *cert. denied*, 525 U.S. 1054 (1998); *Hart*, 127 F.3d at 441; *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998). "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Id.* at 1091-92 (citing *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). In this situation, the individual defendants' actions were not taken pursuant to specific orders spelled out in minute detail beforehand. *See Tamez*, 118 F.3d at 1092. Instead, their responses required deliberation and the exercise of judgment. *See id.* Thus, their actions fell within the realm of discretionary decisions taken within the scope of their official duties. *See id.*

> The qualified or "good faith" immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

*Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *See Heitschmidt v. City of Houston*, 161 F.3d 834, 840 (5th Cir. 1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Jacquez v. Procunier*, 801 F.2d 789,

24

791 (5th Cir. 1986); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell*, 472 U.S. at 526). The qualified immunity defense is also available in claims brought under § 1981. *See Todd v. Hawk*, 72 F.3d 443, 445 n.7 (5th Cir. 1995) (citing *Saunders v. Bush*, 15 F.3d 64 (5th Cir. 1994)). Because it is "an affirmative defense, the defendant must both plead and establish his entitlement to immunity." *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Cronen*, 977 F.2d at 939); *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Harlow*, 457 U.S. at 815. Nevertheless, the Fifth Circuit has explained:

> "Where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the *plaintiff then has the burden* 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' We do 'not require that an official demonstrate that he did not violate clearly established federal rights; *our precedent places that burden upon plaintiffs*.'"

*Felton*, 315 F.3d at 477 (emphasis in original) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal citations omitted) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992))).

"Whether a government official is entitled to qualified immunity 'generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Texas Faculty Ass'n v. University of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))); *see Siegert*, 500 U.S. at 231; *Mitchell*, 472 U.S. at 530; *Harlow*, 457 U.S. at 818; *Felton*, 315 F.3d at 477-78; *Petta v. Rivera*, 143 F.3d 895, 899-900

25

(5th Cir. 1998); *Tamez*, 118 F.3d at 1095 n.5; *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir.), *cert. denied*, 519 U.S. 813 (1996). A defendant "is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct." *Blackwell v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)); *see Saucier*, 533 U.S. at 201; *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994). In considering a claim of qualified immunity, the court must make a two-pronged inquiry:

> "The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional [or federal statutory] right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident."

*Felton*, 315 F.3d at 477 (quoting *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998)); *accord Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998); *Colston*, 130 F.3d at 99; *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996); *Harper*, 21 F.3d at 600; *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993).

"The first prong requires determining 'whether the plaintiff has alleged the deprivation of an *actual* constitutional [or statutory] right,'—that is, a right '*clearly established* . . . under . . . *currently applicable* . . . standards.'" *Felton*, 315 F.3d at 477 (emphasis in original) (quoting *Conn*, 526 U.S. at 290; *Hare*, 135 F.3d at 325-26). "Only if the plaintiff has done so should the court proceed to the second prong." *Id.* A legal right is clearly established if the contours of the right are sufficiently clear that reasonable officials would understand that their conduct violates that right. *See Anderson*, 483 U.S. at 640; *Johnston*, 14 F.3d at 1059; *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989). At the time of the incidents in question, Rodriguez

had a clearly established right to the equal protection of the laws under the Fourteenth Amendment, which extends to protection against employment discrimination, as well as to be shielded from employment discrimination under Title VII. *See Southard*, 114 F.3d at 550; *Coleman*, 113 F.3d at 533; *David v. City & County of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1996); *Jemmott v. Coughlin*, 85 F.3d 61, 68 (2d Cir. 1996); *Annis v. County of Westchester*, 36 F.3d 251, 254-55 (2d Cir. 1994); *Lankford v. City of Hobart*, 27 F.3d 477, 481 (10th Cir. 1994); *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994).

Nevertheless, "'[i]f reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.'" *Blackwell*, 34 F.3d at 303 (quoting *Pfannstiel*, 918 F.2d at 1183); *accord Johnston*, 14 F.3d at 1059; *see Malley*, 475 U.S. at 341; *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996). "The second prong 'focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place.'" *Felton*, 315 F.3d at 478 (quoting *Pierce*, 117 F.3d at 872). "A 'defendant's acts are . . . objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'" *Id.* (quoting *Thompson*, 245 F.3d at 457 (emphasis in original)).

Qualified immunity ""gives ample room for mistaken judgments"" and protects ""all but the plainly incompetent or those who knowingly violate the law."" *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Malley*, 475 U.S. at 341))). Government officials may receive qualified immunity "if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993),

27

*cert. denied*, 511 U.S. 1019 (1994). In assessing the reasonableness of an official's actions, the court is not to employ the "20/20 vision of hindsight." *Colston*, 130 F.3d at 99 (citing *Graham*, 490 U.S. at 396). In other words, if the individual defendants' conduct was objectively reasonable, they may invoke qualified immunity, even if the conduct infringed upon Rodriguez's constitutional rights. *See Kipps*, 197 F.3d at 769; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998); *Pfannstiel*, 918 F.2d at 1183.

"A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001). Once an official asserts his entitlement to qualified immunity in a properly supported motion for summary judgment, the plaintiff bears the burden of coming forward with sufficient summary judgment evidence to sustain a determination that the official's actions violated clearly established federal law. *See Blackwell*, 34 F.3d at 301; *Salas*, 980 F.2d at 304, 306; *Bennett*, 883 F.2d at 408; *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1310 (5th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988); *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982), *cert. denied*, 460 U.S. 1012 (1983). Hence, to prevail, Rodriguez must show that the individual defendants knew or reasonably should have known that the actions they were taking within their sphere of official responsibility would violate Rodriguez's constitutional rights. *See Harlow*, 457 U.S. at 818; *Schultea v. Wood*, 47 F.3d 1427, 1431-32 (5th Cir. 1995).

Here, the appropriate inquiry is whether the individual defendants violated a clearly established federal constitutional or statutory right and whether their conduct was objectively reasonable. *See Felton*, 315 F.3d at 477-78 (citing *Hare*, 135 F.3d at 325). Rodriguez has adduced no evidence that these defendants violated his constitutional or statutory rights or that their

28

actions were unreasonable. Notably, although there is no evidence that the individual defendants harbored a discriminatory animus, such evidence would not obviate the availability of qualified immunity. *See Thompson*, 245 F.3d at 457. Thus, Rodriguez has not overcome the individual defendants' qualified immunity, which shields them from liability under §§ 1981 and 1983 and mandates summary judgment on these claims.

### 5. 90-Day Requirement for Filing Title VII Complaint

"A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992); *see Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir. 1998); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir. 1988); *see also* 42 U.S.. § 2000e-5(f). Title VII states:

> [I]f the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission . . . shall so notify the person aggrieved and within *ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge."

*Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 (5th Cir. 1985) (quoting 42 U.S.C. § 2000e-5(f)(1)) (emphasis in original). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 1287 (2003) (citing *Ringgold v. National Maint. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986); *Espinoza*, 754 F.2d at 1251)); *see Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).

Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances, it is a statutory precondition to the maintenance of any action under

29

Title VII in federal court. *See Taylor*, 296 F.3d at 379; *Dao*, 96 F.3d at 788; *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069-70 (5th Cir. 1981). Like all Title VII filing requirements, the ninety-day requirement is treated as a statute of limitations for all purposes. *See Espinoza*, 754 F.2d at 1248 n.1; *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir. 1983). Thus, dismissal of a Title VII claim is proper where the plaintiff fails to prove that the complaint was filed with the court on a timely basis. *See St. Louis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43, 47-48 (5th Cir. 1995), *cert. denied*, 518 U.S. 1024 (1996); *Smith v. Flagship Int'l*, 609 F. Supp. 58, 61 (N.D. Tex. 1985). In federal court, dismissals grounded on the statute of limitations are final adjudications on the merits. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 819-20 (5th Cir. 1989); *Nilsen*, 701 F.2d at 562.

> The general rule has been stated as:
>
> the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period unless the claimant, through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice.

*Espinoza*, 754 F.2d at 1250. When a date of receipt is not provided, however, a "conclusory allegation that [the] complaint was timely filed is insufficient to preclude dismissal." *Taylor*, 296 F.3d at 379. Therefore, "[w]hen the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Id.* (citing *Lozano v. Ashcroft*, 258 F.3d 1160, 1164-65 (10th Cir. 2001) (recognizing prior application of both three- and five-day presumptions)); *see Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (presuming plaintiff received right-to-sue letter three days after mailing based on FED. R. CIV. P. 6(e)); *Graham-*

*Humphreys*, 209 F.3d at 557 (utilizing rebuttable presumption that notice was received within five days of mailing). In *Taylor*, while not explicitly adopting a seven-day period, the Fifth Circuit applied the presumption that the right-to-sue letter at issue was received on or prior to the seventh day after mailing and affirmed the dismissal of the case because it was brought on the eighth day. *See* 296 F.3d at 380.

In the instant case, Rodriguez's right-to-sue letter from the EEOC on his race and disability discrimination charges was issued on July 10, 2001, but he did not file his complaint until November 15, 2001, 128 days after the notice was issued. Although it is unclear when he actually received his right-to-sue letter, applying the seven-day presumption of receipt, the operative date was October 17, 2001. Rodriguez has given no explanation for his failure to file his complaint on a timely basis and has presented no grounds for application of the doctrines of waiver, estoppel, or equitable tolling. Therefore, Rodriguez's claims of race discrimination and retaliation under Title VII must be dismissed as untimely, as they were filed more than ninety days after the presumptive receipt date of his right-to-sue notice.

### 6. Title VII Statute of Limitations

Moreover, in Texas, to maintain a Title VII claim, a plaintiff must file his charge of discrimination with the EEOC within "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998); *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994); *Anson v. University of Tex. Health Sci. Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992). Generally, the limitations period begins on the date the discriminatory act occurred, and a plaintiff cannot sustain his claims based on incidents that occurred more than 300 days before the filing of

31

a charge of discrimination. *See Webb*, 139 F.3d at 537; *Messer*, 130 F.3d at 134; *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). Any act occurring outside the applicable filing period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n.12 (5th Cir. 1995); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 604 n.5 (5th Cir. 1986); *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981).

The limitations period for a Title VII claim commences "'when facts that would support a cause of action are or should be apparent.'" *Conaway v. Control Data Corp.*, 955 F.2d 355, 362 (5th Cir.), *cert. denied*, 506 U.S. 864 (1992) (quoting *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989)); *see Amburgey v. Cohart Refractories Corp*, 936 F.2d 805, 810 n.14 (5th Cir. 1991). "The time period generally begins to run when the employee receives notice of the allegedly discriminatory decision, not when the employment actually ceases." *Conaway*, 955 F.2d at 362 (citing *Amburgey*, 936 F.2d at 810). Here, Rodriguez filed his EEOC charge of race and disability discrimination on September 17, 1999, alleging that he had been discriminated against since February 1998. Rodriguez's submissions and testimony indicate actual knowledge, or at least sufficient notice to alert a reasonable employee, that his treatment was arguably based on a discriminatory motive well before November 17, 1998 (300 days preceding September 17, 1999). *See Waltman*, 875 F.2d at 476. Rodriguez's complaints regarding his February 1998 reprimand and his September 1998 policy

32

violation, therefore, are barred by the statute of limitations. "'A knowing plaintiff has the obligation to file promptly or lose his claim.'" *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 166 (1st Cir. 1991) (quoting *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990)). "Waiting to see what would happen next was pointless; the harm, if any, already was inflicted." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 484 (3d Cir. 1997). Therefore, Rodriguez's claims of discrimination in relation to those two incidents are barred by the statute of limitations.

### 7. *Prima Facie* Case of Disparate Treatment

Furthermore, aside from the Title VII limitations bar, Rodriguez has not shown that he suffered disparate treatment due to his race. Specifically, he alleges that he was reprimanded, transferred, given biased evaluations, and required to obtain documentation for discretionary leave because of his race. Defendants maintain there were legitimate, non-discriminatory reasons for each of these actions, and none of these incidents entails the type of adverse employment action necessary to show discriminatory treatment or an environment that is permeated with discrimination, as required by law.

To establish a *prima facie* case of disparate treatment, the plaintiff must show that:

(1)     he is a member of a protected class;

(2)     he is qualified for the position;

(3)     he suffered an adverse employment action; and

(4)     others outside the class who were similarly situated were treated more favorably than he.

*See Okoye*, 245 F.3d at 512-13; *Rutherford v. Harris County*, 197 F.3d 173, 183 (5th Cir. 1999); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000 (1998); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 n.5 (5th Cir. 1997); *Waggoner v. City of Garland*, 987 F.2d 1160, 1163-64 (5th Cir. 1993); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988); *Thornbrough*, 760 F.2d at 639. He must demonstrate that employees outside his protected class received preferential treatment in circumstances nearly identical to his. *See Aldrup v. Caldera*, 274 F.3d 282, 287 & n.23 (5th Cir. 2001); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002); *Okoye*, 245 F.3d at 512-13; *Wyvill*, 212 F.3d at 304-05; *Mayberry v. Vought Aircraft Corp.*, 55 F.3d 1086, 1091-92 (5th Cir. 1995); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 670 (S.D. Tex. 2001).

In this case, as to the first two elements, Rodriguez, a Mexican American, clearly is a member of a protected class by virtue of his race and/or national origin, and his qualifications are undisputed. To establish the third element, Rodriguez must establish that he suffered an adverse employment action.

### 8.    Retaliation

Rodriguez contends that Defendants retaliated against him as the result of his advocacy of minority rights and his filing of charges of racial and disability discrimination against his employer. Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,

34

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

The anti-retaliation provision has two components—an opposition clause and a participation clause. *See Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that [he] had at least a 'reasonable belief' that the practices [he] opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *see Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002). The participation clause, however, does not include the "reasonable belief" requirement and provides broad protection to an employee who has participated in a Title VII proceeding. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), *cert. denied*, 523 U.S. 1122 (1998). Under both clauses, the employee must demonstrate that his opposition to perceived unlawful activity was a motivating or determining factor in the adverse employment action taken by his employer, *i.e.*, there must be a causal connection. *See Evans*, 246 F.3d at 353; *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684-85 (5th Cir. 2001); *Jack v. Texaco Res. Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984).

The Fifth Circuit has held that "the familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases." *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *cert. denied*, 536 U.S. 922 (2002) (citing *Rios*, 252 F.3d at 380; *Rubinstein*, 218 F.3d at 401-02); *see*

35

*Aldrup*, 274 F.3d at 286; *Medina*, 238 F.3d at 684. "The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context." *Rios*, 252 F.3d at 380; *accord Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Aldrup*, 274 F.3d at 286; *Medina*, 238 F.3d at 684. Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684. If the employer meets its burden, the employee then bears the ultimate burden of showing that the reasons given by the employer are a pretext for retaliation. *See Gee*, 289 F.3d at 345; *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684. To carry his ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *See Mato*, 267 F.3d at 450; *Rios*, 252 F.3d at 380; *Evans*, 246 F.3d at 354.

To establish a *prima facie* case of retaliation, a plaintiff must show:

(1)     he engaged in statutorily protected activity under Title VII;

(2)     an adverse employment action occurred; and

(3)     a causal connection exists between the protected activity and the adverse employment action.

*See Zaffuto v. City of Hammond*, 308 F.3d 485, 492 (5th Cir. 2002); *Perez*, 307 F.3d at 325; *Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 506-07 (5th Cir. 2002); *Gee*, 289 F.3d at 345; *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001); *accord Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 259 (5th Cir. 2001); *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001); *Evans*, 246 F.3d at 352.

36

"An employee has engaged in protected activity when [he] has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas*, 144 F.3d at 372-73 (quoting 42 U.S.C. § 2000e-3(a)); *accord Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Here, Rodriguez indisputably engaged in protected activity when he filed internal complaints and charges of employment discrimination with the EEOC, thus establishing the first element of a *prima face* case of retaliation. "'[F]iling an administrative complaint is clearly protected activity.'" *Walker*, 214 F.3d at 629 (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)). As with a disparate treatment claim, to be actionable, a Title VII retaliation claim requires a showing of a materially adverse employment action in order to satisfy the second prong of a *prima facie* case.

a.    Adverse Employment Actions

"Title VII was only designed to address '*ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (emphasis in original) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997)); *accord Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528 (5th Cir. 2003); *Felton*, 315 F.3d at 486 (ultimate employment decision requirement applies in disparate treatment as well as retaliation cases); *Webb*, 139 F.3d at 540; *Messer*, 130 F.3d at 140. Actionable adverse employment actions are generally limited to "tangible employment action[s] [that] constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

37

causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998); *see Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999); *Burger*, 168 F.3d at 878; *Webb*, 139 F.3d at 539; *Messer*, 130 F.3d at 135; *Mattern*, 104 F.3d at 707 ("[u]ltimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating"). An ultimate employment decision, in itself or through its direct consequences, must effect a material change in the terms or conditions of employment. *See Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.'" *Mota*, 261 F.3d at 519 (quoting *Walker*, 214 F.3d at 629); *accord Felton*, 315 F.3d at 487; *see Messer*, 130 F.3d at 140.

"[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Watts*, 170 F.3d at 512; *see Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996). "'Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action.'" *Greaser v. Missouri Dep't of Corr.*, 145 F.3d 979, 984 (8th Cir.), *cert. denied*, 525 U.S. 1056 (1998) (quoting *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997)); *accord Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997); *Smart*, 89 F.3d at 441. Interlocutory or mediate decisions, even those that can lead to an ultimate employment decision, are not adverse employment actions for purposes of the employment discrimination statutes. *See Mattern*, 104 F.3d at 708.

38

Documented reprimands alone, while possibly affecting future employment decisions, do not constitute an adverse employment action. *See Felton*, 315 F.3d at 487; *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 470 (5th Cir. 2002). Additionally, "[n]egative performance evaluations, standing alone, cannot constitute an adverse employment action." *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (citing *Smart*, 89 F.3d at 442); *accord Felton*, 315 F.3d at 488; *De la Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 132 F.3d 38, No. 96-17034, 1997 WL 753359, at \*2 n.3 (9th Cir. Dec. 2, 1997), *cert. denied*, 525 U.S. 814 (1998) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)); *Montandon*, 116 F.3d at 359. In *Felton*, the Fifth Circuit found that an unpaid, five-day suspension following an investigation into an employee's personal, long-distance telephone calls had merely a tangential effect on a possible, future, ultimate employment decision and was not presently actionable under Title VII or § 1981. *See* 315 F.3d at 487.

Here, Rodriguez maintains that his reprimands, transfer, allegedly biased evaluations, and the requirement that he submit proof of his need for discretionary leave constitute adverse employment actions. Additionally, he contends that these adverse employment actions were in retaliation for his advocacy of minority rights and his filing a charge of racial discrimination against WSD. In their respective affidavits, which are unrebutted, Buxkemper, Morrow, and Oates attest that they did not discriminate or retaliate against Rodriguez and that decisions regarding Rodriguez's employment were not based on his race. With respect to Rodriguez's reprimands, three of the four were related to work absences for which he had previously been warned. The fourth involved the alteration of a commendation letter, which he does not dispute. Rodriguez also alleges that his transfer from the Estelle Unit to the Wynne Unit constituted an

39

adverse employment action. Neither the reprimands nor the transfer, however, involved a loss of pay or benefits or a change in position, and, therefore, they do not constitute adverse employment actions. *See Watts*, 170 F.3d at 312.

Rodriguez also claims he received biased evaluations, which he views as adverse employment actions. In his 1998-1999 evaluation, he received a "satisfactory" in every category except in assisting the principal and the special education teachers in the maintenance of records, for which he received a "needs improvement" rating. Under this category, Buxkemper wrote that "timelines have been missed, accommodation plans have been missed, need organization of records." Among his comments, Buxkemper recommended that Rodriguez keep daily time schedules, develop better working relationships by leaving the office area and working directly with staff, and keep principals apprised of special education needs. At the end of the evaluation, Buxkemper wrote that Rodriguez performed most of his duties satisfactorily. Rodriguez refused to sign the evaluation, indicating that he wanted the "needs improvement" category changed to at least "satisfactory." In his 1999-2000 evaluation, all of the categories were marked "satisfactory." Following both evaluations, Rodriguez's pay and benefits remained the same, and, therefore, he has failed to demonstrate a cognizable adverse employment action. *See Watts*, 170 F.3d at 512; *Sweeney*, 149 F.3d at 556.

Finally, Rodriguez claims that requiring him to obtain documentation from his court appearance when he requested discretionary leave constitutes an adverse employment action. The Fifth Circuit in *Felton* stated that a denial of leave may constitute an adverse employment action if objectively unreasonable. *See* 315 F.3d at 487-88. In *Felton*, the plaintiff's requested leave was not denied, but it was postponed. The plaintiff, however, acknowledged that no employee

40

was allowed leave during the time period he had requested. *See id.* at 488. Similarly, Rodriguez was not denied leave, but he was required to prove he had a court appearance because a district planning day had previously been scheduled. Due to Rodriguez's history of absenteeism and the prior scheduling of a planning day, Buxkemper's requirement was not objectively unreasonable and does not rise to the level of an adverse employment action.

While Rodriguez complains that Defendants retaliated against him by way of the incidents discussed above, none of these occurrences rises to the level to be actionable under controlling authority. Such actions caused no tangible changes in Rodriguez's duties or working conditions and resulted in no materially significant disadvantages. Hence, they do not constitute adverse employment actions within the scope of Title VII. *See Felton*, 315 F.3d at 486-88.

Therefore, Rodriguez's claims concerning his evaluations, reprimands, transfer, and leave requirements do not involve adverse employment actions for which the anti-discrimination and anti-retaliation provisions of Title VII provide relief, as they effected no direct, material change in Rodriguez's terms and conditions of employment. Under these circumstances, Rodriguez has not shown any actionable conduct by Defendants as required to prove the third element of a *prima facie* case of disparate treatment under Title VII, § 1981, and § 1983 or to establish the second element of a *prima facie* case of retaliation under Title VII.

b.     <u>Similarly Situated Employees</u>

Additionally, as part of his disparate treatment claim, Rodriguez must demonstrate that someone outside of his protected class who engaged in conduct nearly identical to his was treated more favorably by Defendants. *See Wallace*, 271 F.3d at 221; *Wyvill*, 212 F.3d at 304-05 (finding "the striking differences between the two men's situations more than account for the different

treatment they received"). Here, Rodriguez has produced no evidence of other employees in nearly identical situations who received more favorable treatment than he. There is no indication in the record of any employee—either a non-member or a member of his protected class—who falsified a document or had a high number of absences but was treated more leniently by Defendants.

In sum, although Rodriguez has alleged that he was a victim of discrimination, he has provided only conclusory allegations, not facts, in support of the fourth element of a disparate treatment claim. Because he has not established a *prima facie* case of discrimination or retaliation, granting Defendants' motion for summary judgment with respect to Rodriguez's disparate treatment and retaliation claims under Title VII, § 1981, and § 1983 is warranted.

### 9. Hostile Work Environment

Rodriguez contends that he was subjected to a hostile work environment based on both his race and gender.

### a. Racial Harassment

To establish a *prima facie* case of racial harassment by a supervisor with immediate or successively higher authority over the employee, a plaintiff must show that:

(1)     he belongs to a protected class;

(2)     he was subject to unwelcome harassment;

(3)     the harassment was based on race; and

(4)     the harassment affected a term, condition, or privilege of employment.

*See Felton,* 315 F.3d at 484 ; *Celestine v. Petroleos De Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001); *Watts,* 170 F.3d at 509; *Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir. 1996);

42

*DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, 516 U.S. 974 (1995); *see also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997) (citing *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir. 1993)). When a supervisory employee is involved, once the plaintiff satisfies these four elements, an "'employer is subject to vicarious liability to a victimized employee.'" *Watts*, 170 F.3d at 509 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)); *see Ellerth*, 524 U.S. at 764; *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 411 (6th Cir. 1999).[2]

Racially discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment in violation of Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Walker*, 214 F.3d at 626; *Weller*, 84 F.3d at 194; *DeAngelis*, 51 F.3d at 593. "Hostile work environment" racial harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To survive summary judgment on a hostile work environment claim based on race, the nonmovant must create a fact issue as to each of the following elements: "(1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *Walker*, 214 F.3d at 625 (citing *DeAngelis*, 51 F.3d at 594); *accord Felton*, 315 F.3d at 485. Whether a work

---

[2] Although the Supreme Court's decisions in *Faragher* and *Ellerth* deal with claims of sexual harassment, their reasoning is equally applicable to claims of racial harassment. *See Walker*, 214 F.3d at 626 n.13; *Allen*, 165 F.3d at 411; *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998).

environment meets these criteria depends upon the totality of the circumstances. *See Harris*, 510 U.S. at 22; *Walker*, 214 F.3d at 625; *DeAngelis*, 51 F.3d at 594.

To be actionable, the challenged conduct must be sufficiently severe or pervasive as to create an environment that a reasonable person would find hostile or abusive considering all the circumstances. *See Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998); *Felton*, 315 F.3d at 485; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Allen*, 165 F.3d at 410; *Wright-Simmons*, 155 F.3d at 1269; *Weller*, 84 F.3d at 194 (citing *Harris*, 510 U.S. at 21). These circumstances may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Harris*, 510 U.S. at 23; *Walker*, 214 F.3d at 625; *Wright-Simmons*, 155 F.3d at 1269; *DeAngelis*, 51 F.3d at 594. Conduct in the workplace that could be labeled as "harassment" will not fall within the purview of Title VII or § 1981, however, if (1) it fails to affect a term, condition, or privilege of employment or (2) it is not based on a prohibited discriminatory animus. *See Trujillo v. University of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.), *cert. denied*, 516 U.S. 826 (1995) (citing *Vinson*, 477 U.S. at 67)); *see also Felton*, 315 F.3d at 485. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . race.'" *Oncale*, 523 U.S. at 80 (emphasis in original); *see Haynes v. BlueCross & BlueShield of Tex., Inc.*, No. Civ. A. 3:97-CV-2881-R, 2000 WL 140744, at *12 (N.D. Tex. Feb. 4, 2000).

Moreover, to establish a viable racial harassment claim, the plaintiff must present "'more than a few isolated incidents of racial enmity.'" *Bolden*, 43 F.3d at 551 (quoting *Hicks v. Gates*

44

*Rubber Co.*, 833 F.2d 1406, 1417-18 (10th Cir. 1987)); *see Trujillo*, 157 F.3d at 1214; *Turner v. Local 1211, Int'l Union, Auto Aerospace & Agric. Implement Workers of Am., UAW*, 149 F.3d 1184, No. 97-3262, 1998 WL 385918, at *2 (6th Cir. July 2, 1998); *accord Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986). "Title VII 'was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace,' and therefore conduct that only 'sporadically wounds or offends but does not hinder' an employee's performance is not actionable." *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996), *aff'd*, 134 F.3d 368 (5th Cir. 1997) (quoting *Weller*, 84 F.3d at 194). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 82) (citations omitted); *see Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999). Indeed, the "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not sufficiently alter terms and conditions of employment to violate Title VII." *Faragher*, 524 U.S. at 787 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972)); *see Shepherd*, 168 F.3d at 874; *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 329 (5th Cir. 1998), *cert. denied*, 526 U.S. 1051 (1999) (citing *Anderson*, 26 F.3d at 1295); *DeAngelis*, 51 F.3d at 595. Thus, "[w]hile it is true that racial harassment can form the basis of both a Title VII and a § 1981 action, it is equally true that occasional or sporadic uses of racial slurs or epithets will not in and of themselves support an actionable claim of racial harassment under Title VII or § 1981." *North v. Madison Area Ass'n for Retarded Citizens—Dev. Ctrs. Corp.*, 844 F.2d 401, 408-09 (7th Cir. 1988).

45

Rodriguez contends that he was subjected to a hostile work environment because he is Mexican American. In his complaint, he references a conversation he allegedly had with Buxkemper regarding a leave request. Rodriguez alleges that Buxkemper asked him if he needed to use a day of leave "to celebrate *Cinco de Mayo* with [his] Mexican friends." At deposition, he he also testified that Buxkemper "called [him] polio one time" and referred to him as "dumb Rodriguez" or "damn Rodriguez." Buxkemper denies making any racial slurs or offensive comments directed at Rodriguez or discriminating against him. "Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII." *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1260, 1266 (7th Cir. 1993), *cert. denied*, 511 U.S. 1005 (1994). Racially based comments, even when made by the decision maker and highly offensive under contemporary standards, have been found insufficient to prove racial animus when the use of such slurs was infrequent and was not related to the challenged decision. *See Boyd*, 158 F.3d at 329-30. "[S]uch remarks, when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker." *Hong*, 993 F.2d at 1266; *see Boyd*, 158 F.3d at 330 (citing *Ray*, 63 F.3d at 434); *Figures v. Board of Pub. Utils. of City of Kansas City*, 967 F.2d 357, 360-61 (10th Cir. 1992); *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-39 (9th Cir. 1990); *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989).

There is no indication that the alleged comments about which Rodriguez complains were related or proximate to his reprimands, transfer, or allegedly biased evaluations. While Rodriguez

46

asserts that the *Cinco de Mayo* remark was related to the requirement that he submit documentation substantiating his absence, this isolated comment is not sufficiently severe or pervasive to affect the terms or conditions of his employment. Thus, Rodriguez has failed to adduce sufficient probative evidence showing a connection between any derogatory comments or discriminatory animus of Buxkemper or any other WSD employee and his employment. *See Boyd*, 158 F.3d at 330; *Price*, 119 F.3d at 337. Instead, he relies on isolated, vague, innocuous, or remote stray remarks that are insufficient to sustain his burden on summary judgment.

Although Buxkemper's alleged remarks may have been tactless and potentially derogatory, they are relatively mild compared to other comments the courts have found not to be actionable as a matter of law. *See, e.g., Boyd*, 158 F.3d at 329-30 (supervisor's isolated references to an African-American employee as a "Porch Monkey" and "Buckwheat" held to be stray remarks from which race discrimination could not be inferred); *Waggoner*, 987 F.2d at 1166 (supervisor stating that "younger person could do faster work" and reference to plaintiff as "old fart" were merely stray remarks and not actionable); *Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990) (finding that "'white tokens' and 'white faggots' remarks would not be enough to shift the burden to the City"); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981) (when there was "no steady barrage of opprobrious racial comment," occasional use by supervisors and fellow employees of the term "niggers" to refer to plaintiffs held not to violate Title VII); *Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir. 1977) (reference by stadium director to plaintiff as a "dago" and to other Italian-American employees as the "Mafia" did not amount to a violation of Title VII); *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1000 (N.D. Tex. 1997) (comment by physician involved in termination decision to "get that nigger rap

47

music off of the telephone hold" found not sufficient to prove a racial animus when employee was not terminated for playing rap music). "'The language of the factory and the language of the street have long included words such as "Greaser," "Dago," and "Spick," and "Kike" and "Chink" as well as "Nigger."'" *Bailey v. Binyon*, 583 F. Supp. 923, 931 (N.D. Ill. 1984) (quoting *Howard v. National Cash Register Co.*, 388 F. Supp. 603, 606 (S.D. Ohio 1979)).

While not laudable, in the absence of other evidence of discriminatory motive, Buxkemper's alleged use of the terms about which Rodriguez complains does not serve as the basis for a cognizable claim of race or national origin discrimination. When examining the frequency and severity of the alleged conduct and whether it unreasonably interfered with Rodriguez's work performance, it is clear that these allegations do not rise to the level of a hostile work environment. Hence, summary judgment with respect to Rodriguez's claim of racial harassment in violation of Title VII, § 1981, and § 1983, is proper.

### b. Sexual Harassment

The Fifth Circuit has defined "unwelcome sexual harassment" as "sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or uninvited and is undesirable or offensive to the employee." *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987). Traditionally, two principal theories of sexual harassment have been recognized under Title VII—*quid pro quo* and hostile work environment. *See Vinson*, 477 U.S. 57 at 65; *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 1254 (2003). If the employee has suffered a "tangible employment action," the claim is classified as a "*quid pro quo*"

48

case; if he has not, the claim is classified as a "hostile environment" case. *Id.* (citing *Casiano v. AT & T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000)).

In this case, Rodriguez alleges that he was subjected to a sexually hostile work environment, a cause of action that requires the existence of severe or pervasive and unwelcome verbal or physical harassment directed toward him because of his gender. *See Ellerth*, 524 U.S. at 752; *Oncale*, 523 U.S. at 75; *Vinson*, 477 U.S. at 66-67; *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002); *Sischo-Nownejad v. Merced Community Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991); *Young v. Will County Dep't of Pub. Aid*, 882 F.2d 290, 294 (7th Cir. 1989); *Jones*, 793 F.2d at 719-20.   Sexual harassment occurs when an employer's conduct "'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Vinson*, 477 U.S. at 65 (quoting 29 C.F.R. § 1604.11(a)(3)). "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" *Oncale*, 523 U.S. at 78 (quoting *Harris*, 510 U.S. at 21); *see Vinson*, 477 U.S. at 65, 67; *Mota*, 261 F.3d 512, 524 (5th Cir. 2001); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998); *Williamson v. City of Houston*, 148 F.3d 462, 464 (5th Cir. 1998); *Weller*, 84 F.3d at 194.   The Supreme Court has made it "clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 775.  To be actionable, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so." *Id.* at 787 (citing *Harris*, 510 U.S. at 21-22); *see Oncale*, 523 U.S. at 80;

49

The Exhibit(s) May

Be Viewed in the

Office of the Clerk